THOMAS R. DIXON and ELIZA N. DIXON *v.* REUBEN CHADWICK.

Suit to rescind sale of slaves. Judgment for plaintiffs and damages allowed.

Want of tender under the circumstances of this case, is a fatal obstacle to plaintiffs' recovery. SPOFFORD, J., dissenting.

The well established rule requiring a tender where the tender is not impossible, nor even inconvenient, results from the general doctrine of commutative contracts, and affords a salutary check against fraud, concealment, and the after thoughts of self-interest. The vendor, warned in time, may take back his property and by attention save it. The vendee, who, having discovered a redhibitory defect, neglects to notify the vendor by an offer to restore the thing, seems to take the risk of its perishing from that cause upon himself. SPOFFORD, J., dissenting.

APPEAL from the District Court, Tenth District, parish of Tensas, *Snyder*, J. *Farrar*, for plaintiffs.

*Reeves & Biscoe*, for defendant, cited, on the question of tender: *Janin* v. *Traullin*, 4 La. 198; *Barret* v. *Bullard*,ᵉ 19 La. 281; *Fazende* v. *Hagan*, 9 Rob. 306 ; *Bach* v. *Barret*, 2 An. 955; *Fisk* v. *Proctor*, 4 An. 592.

LEA, J. This is a suit to recover the price of two slaves sold by the defendant to the plaintiffs, in the capacity in which they present themselves before the court, on the ground of alleged redhibitory defects existing at the time of the sale. The defendant admits the sale, but avers that the slaves were sold as unsound; that he made a full disclosure of the fact that they were diseased, before the sale, and that the plaintiffs took upon themselves the risk of their recovery.

Preëxisting redhibitory defects in both the slaves, being sufficiently established by the evidence, and admitted of record, it was incumbent upon the defendant to prove affirmatively, that he made a full disclosure with reference to their condition. It is shown that both of the slaves died of incurable maladies, although they received careful treatment under proper medical advice. No bill of exceptions was taken to the admission of any portion of the evidence offered on the trial, nor to the charge of the court under which the jury found a verdict for the plaintiffs. The evidence being conflicting and the solution of the issue between the parties being dependent exclusively upon the credibility of the witnesses, we do not feel at liberty to disturb the verdict of the jury, so far as it determines the question of fact upon which it is based; but that fact carries with it a liability for damages. The defendant admits that he knew of the unsound condition of the slaves at the time of the sale. He is therefore liable in damages caused by the trouble and expense, shown to have been incurred during the sickness of the deceased slaves.

The evidence does not enable us to arrive at any other than an approximative estimate of the value of these services. We think $100 will be a sufficient remuneration of all necessary charges incurred. Under the circumstances as disclosed by the evidence, we think a tender of the slaves to plaintiffs, was unnecessary, if not impracticable.

It is ordered, that the judgment appealed from be amended, so as to read as follows :

It is ordered, that the plaintiffs for themselves and for the use of their minor daughter, *Mary C. M. Dixon*, as set forth in their petition, do have and recover of the defendant, *Reuben Chadwick*, the sum of $900, with interest thereon,

at the rate of five per cent. per annum, from the 11th day of December, 1854, till paid, with costs of suit, together with the costs of this appeal.

SPOFFORD, J., dissenting.   I think the plaintiffs should suffer a non-suit.

On the merits, the evidence is vague and obscure.

But the want of a tender, under the circumstances of this case, seems to me to be a fatal obstacle in the plaintiffs' way.

They alleged, in their petition, that they had demanded a rescission of the agreement to sell, tendered back the slaves, and asked for a return of the price, which the defendant had refused.

In his answer, the defendant averred that the plaintiffs kept the slaves until the day of their death, without ever offering to return them, or expressing the slightest dissatisfaction on account of their health.

The only evidence on the subject, thus distinctly put at issue by both parties, is that of a witness, who testifies that he heard the defendant offer "to back out of the trade, but *Mr. Dixon* (one of the plaintiffs) said he did not think he could do it."   This conversation is said to have been held on the 20th of January, 1854, which was a month after the trade is alleged by plaintiffs *to have been made, and the slaves delivered, and some days at least after the* plaintiffs had been apprised by their physician of the maladies complained of.

There is nothing in the record from which I can infer that it was impossible or even inconsistent for the plaintiffs to offer to return the slaves, after discovering the redhibitory vices.

The well established rule, requiring a tender in such cases, results from the general doctrine of commutative contracts, and affords a salutary check against fraud, concealment, and the after thoughts of self-interest.   The vendor, warned in time, may take back his property, and by attention, save it.   The vendee, who, having discovered a redhibitory defect, neglects to notify the vendor by an offer to restore the thing, seems to take the risk of its perishing from that cause, upon himself.